IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRAIG T. SMITH,

    Plaintiff,

v.                                                                            No. 23-cv-179-WJ-JFR

BOARD OF COUNTY
COMMISSIONERS FOR THE
COUNTY OF BERNALILLO,

    Defendant.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

**THIS MATTER** is before the Court on Plaintiff Craig Smith's Motion to Grant Relief, filed January 19, 2024. (Doc. 12) (the "Motion"). Plaintiff filed the Motion in response to the Court's Memorandum Opinion and Order of Dismissal, in which the Court dismissed Plaintiff's pro se Civil Complaint (Doc. 1-1) (the "Original Complaint") and set a deadline of January 25, 2024, for Plaintiff to file an amended Complaint. (Doc. 11) ("Screening Ruling"). When he filed the Original Complaint, Plaintiff was a pretrial detainee at the Bernalillo County Metropolitan Detention Center ("MDC"). He is proceeding *pro se*.

In the Original Complaint, Plaintiff claimed that the conditions of confinement at MDC violated his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Specifically, he alleged that cyberhackers attacked Bernalillo County databases, internet connections and MDC's electronic security systems in January 2022, which compromised state prosecutors' ability to pursue convictions against the pretrial detainees held at MDC. (Doc. 1-1 at 1). It also affected MDC's automatic doors and security cameras. (Id.). Then,

in June 2022, MDC chief Greg Richardson declared a state of emergency at MDC due to understaffing (allegedly a 51.09 % vacancy rate among correctional officers and "crucial" understaffing among the medical providers). (Id.). Plaintiff alleged that under these circumstances, corrections officers are authorized to use deadly force against the inmates, the Chief Public Defender instructed attorneys and staff to stop visiting clients at MDC in person, and MDC was "constantly locked down." (Id.). Plaintiff attributed the staffing issues to MDC Chief Richardson, whom, he alleged, created a toxic environment for MDC security and medical staff, causing them to quit their jobs. (Doc. 1-1 at 2). He alleged, as well, that Richardson and the County Commissioners, along with Albuquerque's mayor, the Second Judicial District Court, the District Attorney's Office, and the Law Offices of the Public Defender were culpable for their collective failure to remedy what Plaintiff characterized as MDC's humanitarian crisis. (Doc. 1-1 at 2).

As to the effect of these conditions on him, personally, Plaintiff alleged that three times in September 2022, he was locked down for five days at a time and on several other days in the same month, he only had half an hour outside of his cell. (Doc. 1-1 at 2). In response to his written grievance about the excessive lockdowns "security" allegedly advised Plaintiff that they were trying to address the problem to keep the lockdowns at a minimum. (Id.).

Based on the foregoing, Plaintiff claimed in the Original Complaint that his right to be free from cruel and unusual punishment was violated. (Doc. 1-1 at 2). Since Plaintiff is a pretrial detainee, this claim arises under the due process clause of the Fourteenth Amendment. Plaintiff also referred to the Constitutional guarantees of equal protection, the right to a fair trial, and the right to counsel, though the claims were not clearly developed. (Id.).

By a Memorandum Opinion and Order entered December 26, 2023, the Court screened the Complaint and determined it failed to state a cognizable claim.  (Doc. 11) (Screening Ruling); *see*

*also* 28 U.S.C. § 1915A (requiring *sua sponte* screening of inmate complaints). Summarized, the Court held that Plaintiff's allegations did not demonstrate a violation of his Constitutional right to be free from cruel and unusual punishment. *See* Screening Ruling at 6 (Explaining that "pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment's proscription against cruel and unusual punishment, but the standards governing claims of cruel and unusual punishment are the same in either context," and citing *Van Curen v. McClain Cnty. Bd. of Cnty. Comm'rs*, 4 F. App'x 554, 556 (10th Cir. 2001)). This, because although they were restrictive, the conditions Plaintiff complained of did not rise to the level of deprivation of a minimal measure of life's necessities protected by the Eighth/Fourteenth Amendments. *See e.g.*, *Ajaj v. United States*, 293 Fed. App'x 575, 582–84 (10th Cir. 2008) (finding conditions such as "lock-down for 23 hours per day," and "limited ability to exercise outdoors" did not amount to an Eighth Amendment violation); *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir. 2003) (finding no cruel and unusual punishment where inmate was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days"); *Silverstein v. Fed. Bureau of Prisons*, 559 Fed. App'x 739, 755 (10th Cir. 2014) (finding no violation where plaintiff had only had 10 hours per week of recreation time); *Smith v. Romer*, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997) (finding no violation stemming from 23-hour lockdown, limited vocational, educational, and recreational services, and exercise of one hour per day in cell). Additionally, that the complained of lockdowns were caused by the unusual circumstances of a cyberattack affecting the security systems and understaffing and were limited to the month of September is also inconsistent with a viable Constitutional claim. *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth

3

Amendment violation, while "substantial deprivations of shelter, food, drinking water, and sanitation" may meet the standard despite a shorter duration.").

The Court reasoned, further, that even if it were otherwise such that the alleged lockdowns caused conditions that violated the protections of the Eighth/Fourteenth Amendments, the claim failed because Plaintiff did not allege facts demonstrating the existence of a policy or custom that caused the lockdowns or showing deliberate indifference. In dismissing the claim, the Court set forth the governing legal standards to facilitate Plaintiff's ability to amend it if he so chose.

The Court also addressed Plaintiff's references to equal protection, the right to a fair trial, and the right to counsel, explaining that the Original Complaint did not contain sufficient factual development to state discernable claims, but providing an overview of the law governing such claims. This, again, to facilitate Plaintiff's ability to file a potentially viable amended complaint.

Finally, the Court addressed the individuals not named as defendants but referenced as wrongdoers in the Original Complaint (Richardson, Albuquerque's mayor, the Second Judicial District Court, the District Attorney's Office, and the Law Offices of the Public Defender). Without addressing the potential viability of any potential claims against these individuals/entities, the Court explained that if Plaintiff intended to pursue claims against them, he should file an amended complaint including specific allegations showing what each of them did in violation of Plaintiff's Constitutional rights.

Consistent with *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990), the Court *sua sponte* permitted Plaintiff to file an amended complaint curing the above deficiencies within thirty days. Plaintiff was warned that the failure to timely file an amended complaint would result in the dismissal of this case with prejudice. The amendment deadline was of January 25, 2024. Plaintiff did not file an amended complaint. Instead, he filed the Motion, which is comprised of

generalized allegations of harm to himself and other inmates, but which does not comport with the general pleading standards or the legal standards governing his claims as set forth in the Screening Ruling. To the extent the Motion seeks to avoid dismissal, it shall be denied for the reasons set forth herein and in the Screening Ruling. To the extent the Motion constitutes an amended complaint, it shall be dismissed on the same grounds. For the foregoing reasons, and for the reasons set forth in the Screening Ruling, the Court will dismiss this action with prejudice pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

**IT IS THEREFORE ORDERED** that Plaintiff's Original Complaint **(Doc. 1-1)** is **DISMISSED** with prejudice and the Motion **(Doc. 12)** is **DENIED**.

**IT IS FURTHER ORDERED** that Court will enter a separate judgment closing the civil case.

_____
CHIEF UNITED STATES DISTRICT JUDGE